which are the equivalent of an adjudication that the plaintiff is not entitled to the injunction. That is not this case.

It follows, therefore, that the order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.

---

(96 App. Div. 376.)

### CARPENTER v. NEW YORK EVENING JOURNAL PUB. CO.

(Supreme Court, Appellate Division, First Department. July 13, 1904.)

1. **LIBEL—EVIDENCE—HEARSAY.**
   In an action for libel in publishing a charge that plaintiff had been guilty of forgery, testimony in support of the defense of justification, given by one in the district attorney's office at the time of the publication, that he had made an examination into the charges against plaintiff, and had reported against their dismissal, and had told the recorder that in his opinion the case was "fixed," was hearsay and incompetent.

2. **SAME—OPINIONS.**
   The testimony was also incompetent as containing the mere opinion of the witness as to the merits of the charge against plaintiff.

3. **SAME.**
   Testimony of a reporter that he had stated to an attorney that plaintiff had quite a record as a "jail bird," and that the attorney had stated that there was no danger of any libel suit from plaintiff, was likewise incompetent.

4. **SAME—JUSTIFICATION—SUFFICIENCY OF PROOF.**
   To constitute justification of a libel in which plaintiff was characterized as a "rogues' gallery man," the supporting proof must be as broad as the charge, and mere evidence that plaintiff's record was pigeonholed at police headquarters was insufficient to constitute justification.

5. **SAME—EVIDENCE—POLICE RECORDS.**
   The record at police headquarters of a man's record is admissible, in an action for libeling him, only on the question of malice in the publication; it is not evidence of the facts stated therein, so as to constitute a justification for a criminal charge.

6. **SAME—MITIGATING EVIDENCE—PUBLICATION OF OTHER LIBELS.**
   In order that the publisher of a libel may show, in mitigation of damages, the publication of similar libelous articles in other newspapers, it must be shown that he saw the articles in such papers, and was influenced thereby or believed them to be true.

7. **APPEAL—PREJUDICIAL ERROR—CURE.**
   An appellate court must assume that improper and prejudicial testimony may have influenced the jury, and the error in its admission is not cured by other proof, however strong, in support of the verdict.

Action by George Heywood Carpenter against the New York Evening Journal Publishing Company. From a judgment for nominal damages, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and LAUGHLIN, JJ.

Franklin Pierce, for appellant.
Clarence J. Shearn, for respondent.

¶ 6. See Libel and Slander, vol. 32, Cent. Dig. § 165.

HATCH, J. The plaintiff herein had a verdict in his favor for six cents damages. Thereupon he made a motion for a new trial upon the exceptions taken upon the trial, for the insufficiency of the award of damages, and for other reasons. This motion having been denied, this appeal is taken.

The complaint avers in substance that in January, 1902, the plaintiff was drawn as a juror upon the trial of Albert T. Patrick, charged in an indictment with murder; that the case was sensational, and attracted a great deal of attention throughout the United States and Europe; that public attention of the whole country was attracted to the drawing of the jury; that plaintiff was accepted as a juror upon such trial, and took his seat as juror No. 3; that upon the 22d day of January, 1902, at plaintiff's request, the court, with the consent of counsel on both sides, permitted the plaintiff to retire from such jury, and thereafter upon the same day the defendant published as headlines, several inches in height, the following malicious and defamatory words:

"Expelled Juror Is A Rogues' Gallery Man. Former Juror No. 3 Was Once Wanted By Police For Forgery And Is Dropped By Goff—Sensation Stirs The Court."

Then followed in smaller type the following:

"The exclusion from the jury box in the Patrick murder trial this afternoon of George H. Carpenter, juror number three, caused a great sensation. The Evening Journal's investigation of the man's record revealed the reason, although neither Recorder Goff nor the lawyers on either side would tell what it was. Confronted with the police records showing him to have been arrested no less than three times, to have been a fugitive charged with forgery, and as such advertised all over the country, with his photographs and record on file in the rogues' gallery at police headquarters, Carpenter admitted that he is the man, and expressed surprise that he should have been accepted as a juror in the first place. Mr. Carpenter's remarkable record as a man accused of serious crimes is from the official police papers. It tells of his arrest in New York charged with a $60,000 forgery, his flight from the city, the pursuit of him, leading all over the country; his capture in Jacksonville, Florida; his escape there from a New York detective, and his recapture in Chillicothe, Ohio, under remarkable circumstances."

The complaint further avers that, having been informed that the defendant was intending to make such publication, plaintiff called at the office of the defendant and stated to them that he had in fact been arrested and indicted for forgery, but that the prosecuting attorney and the court, upon petition of the complainants themselves, had, upon a thorough investigation of the facts, determined that he was innocent, and recommended that the criminal prosecution be discontinued; and that knowing this, and with intent to injure the plaintiff, defendant published the above, adding only:

"Carpenter called at the Evening Journal's office late this afternoon. He admitted that he had been arrested, but said he was exonerated. The Evening Journal desires to give this statement the broadest publicity."

The complaint also contains the usual averments to bring the publication within the rules applicable to actions for libel.

The defendant, in answer to the complaint, pleaded a justification

of the publication complained of, and, as a separate defense, that the article was privileged, as being a fair and true report of a judicial proceeding, and, as a separate and further defense, matter in mitigation and reduction of damages.

It is evident that the counsel who tried this case sought to secure results from the jury, and therefore had little regard for rules of evidence and competency of proof, with the result that the case is filled with numerous and glaring errors which necessitate a reversal of the judgment. We are not required in the disposition which we make of this case to specify all the violations of law which occurred on the trial and appearing in this voluminous record. Direction to some essentially erroneous rulings will answer every requirement. To establish the defense of justification, the defendant called William Travers Jerome as a witness. He testified that he was the district attorney of New York county at the time of the Patrick trial; that during the administration of District Attorney Fellows, and prior to the witness' accession to that office, he was an assistant in the office, and was called upon to, and did, make an examination into the charges made against the plaintiff, which resulted in the finding of an indictment against him for forgery; that he had reported against the dismissal of the indictment, and that in his judgment it was a perfectly plain case requiring trial. He further testified that he made this statement to Recorder Goff, and also told him that in his opinion "the case was fixed." To all of this testimony the plaintiff made repeated objection, which was overruled, and to which he took an exception, and also made repeated motions to strike out the testimony, which motions were denied, and to which rulings he took exception. It needs no authority to support the conclusion that this evidence was essentially incompetent. It was mere hearsay, and did not rise to the dignity of proof. For a much slighter infringement in a similar case, this court reversed a judgment. Throckmorton v. Evening Post Pub. Co., 27 App. Div. 125, 50 N. Y. Supp. 153. It was also more vicious than hearsay testimony, for the reason that the witness was not only permitted to testify to the investigation which he made, and its results, but was also permitted to give his opinion respecting the merits of the case, and the opinion thus expressed adjudged the plaintiff guilty of a crime of which he was charged in the indictment, and at a single stroke the defendant established its defense of justification, as there was left nothing for the jury to determine. In practical effect, the witness was permitted not only to establish a justification, but to render the verdict in favor of the defendant, for when this testimony was received, if credited by the jury—and they had the right to credit it under the ruling of the court—there remained nothing for them to do save to register in proper form the opinion and judgment which had been pronounced. The ruling is so plainly erroneous as not to require further discussion.

The defendant called Robert H. Cartwright as a witness, who testified that he was a reporter for the defendant, and was engaged in investigating the record of the plaintiff. In the course of such investigation he called upon Lawyer House, and was permitted to give in evi-

dence the conversation, over the objection and exception of plaintiff, had with him. Among other things, the following transpired:

"Q. Then what did you do? A. Went back to Mr. House, and I said to him, 'Mr. House, your friend the juror got quite a record as a jail bird, hasn't he?' He laughed and said, 'Where did you pick that up?' I said I learned it. I said, 'How serious is this business?' And he said, 'Well, I can't tell you; I am supposed not to speak about this matter.' 'Well,' I said, 'for my own protection and safety, is there any fear of a libel suit if that was published?' Mr. Pierce: I object to his answer or his opinion about a libel suit. (Objection overruled. Exception by Mr. Pierce.) A. (continued): He laughed and said, 'I do not think so; I don't think Mr. Carpenter will bother you.' Mr. Pierce: I move that it be stricken out as incompetent. (Motion denied. Exception by Mr. Pierce.)"

This conversation was wholly incompetent, as was also the opinion expressed by House. Its direct effect was to convey to the minds of the jury that plaintiff was a "jail bird"; that the witness wanted to insure his safety, or that of the defendant in saying so; and then drew out the opinion from Mr. House that the plaintiff's character was so bad and his record so damaging that there need be no fear of any libel suit. It needs no argument to show that such statement and opinion were not only incompetent, but highly prejudicial. The charge in the article was that the "expelled juror is a rogues' gallery man." The complaint avers that the defendant thereby intended to charge by this language that the plaintiff was and had been an habitual criminal, and that his pedigree was in the rogues' gallery of the police department of the city of New York. In order to constitute justification of this charge, the proof in its support must have been as broad as the charge. Collis v. Press Pub. Co., 68 App. Div. 38, 74 N. Y. Supp. 78. The court, in submitting the case to the jury, left it to them to say as a question of fact whether the statement was true or not. The submission in this aspect was unwarranted, as it was conceded, both on the trial and in the argument in this court, that plaintiff's picture did not adorn the rogues' gallery, nor was any record of him found therein. What was found was what purported to be his record at police headquarters in a pigeonhole and in another room. It may be that this record was so closely associated with the rogues' gallery as to permit of the jury's finding that, even though the charge to that extent was not justified, yet that the plaintiff suffered no damage from it. The court was bound to charge under the proof that the charge as made in the libel in this respect had not been justified by proof as broad as the charge, as this confessedly was the fact. The record found at police headquarters was doubtless admissible in evidence, but it was only so admissible upon the question of malice in the publication. Such record did not prove the facts assumed to be stated therein, and the defendant, in order to justify, was required to give proof of the facts by evidence at first hand. This record was not such evidence, yet it seems to have been received generally upon all the questions in the case. It was erroneous so far as it was used for such enlarged purpose.

Defendant pleaded, for a separate and further defense, a large number of newspaper articles and clippings published of and concerning the

plaintiff and relating to the charge contained in the article. In addition thereto the defendant was permitted, over the objection and exception of plaintiff, to offer in evidence other newspaper articles not pleaded in the answer nor otherwise referred to. One illustration will suffice. This clipping opens with the announcement, "Diamonds to Handcuffs," and then proceeds to give an account of the plaintiff's wanderings through New York and Florida, and comments upon his general career of forging and swindling. The rule which permits such publications to be received in evidence is stated by Judge Martin in Palmer v. Matthews, 162 N. Y. 100, 56 N. E. 501:

"While the defendant may, perhaps, show in mitigation of damages that he copied the libelous paragraph from a public newspaper, and hence believed it to be true, he may not show that other journals published the same statement simultaneously or subsequently to the publication complained of. Nor can he prove that the alleged libel appeared in another newspaper, for which the plaintiff had already recovered damages."

This excerpt clearly shows that the reception of such evidence is carefully guarded, and must fall squarely within the rule in order to be admissible, and it must be accompanied by proof showing that such articles published in newspapers other than its own were seen by the publisher in such papers, that he was influenced thereby, or that the person publishing, after reading the articles in the papers in which they appeared, believed them to be true. Gray v. Brooklyn Union Pub. Co., 35 App. Div. 286, 55 N. Y. Supp. 35. Under this rule it is more than doubtful whether compliance was had with it as to most of the articles which were pleaded in the answer as a defense in mitigation; but, however that may be, as to the article to which we last called attention there was no proof or pretense that it was pleaded in the answer, or that any one connected with the newspaper was influenced by it, or had seen it prior to the publication of this libel, or that they believed it to be true. Consequently it was clearly erroneous. These questions were all properly presented by objection and exception. It is quite true that the defendant has an abundance of competent testimony which, if believed by the jury, tended strongly in justification of a large part of the libelous article, and the evidence which it has urged upon the court's attention to the effect that either justification was completely established, or matter to such extent had been pleaded and proved, in mitigation and reduction of damages, that the jury could not do otherwise than it did in awarding a verdict for six cents; but the difficulty with this proposition is that evidence which was clearly improper and prejudicial was also received and considered by the jury, and this court is unable to say to what extent they were influenced thereby. On the contrary, we are bound to assume that they may have been so influenced by it, and, however strong the proof be in support of defendant's contention, it cannot avail to cure the errors which were thus committed.

The judgment and order should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.