**HARTMANN v. AMERICAN NEWS CO.**

No. 9508.

United States Court of Appeals
Seventh Circuit.

Dec. 3, 1948.

Rehearing Denied Jan. 4, 1949.

Sigmund Goldstein, of New York City, and Anna Mae Davis, of Madison, Wis., for appellant.

H. H. Thomas, San W. Orr, Thomas, Orr, Isaksen & Werner, all of Madison, Wis., and Cravath, Swaine & Moore and Harold R. Medina, Jr., all of New York City, for American News Co.

Before MAJOR, Chief Judge, KERNER, Circuit Judge, and LINDLEY, District Judge.

KERNER, Circuit Judge.

Plaintiff brought an action for damages as the result of the defendant's distribution of two alleged libels printed in the picture magazine Life. The cause was heard by a jury which rendered a verdict for the defendant. A judgment was entered in accordance therewith, and plaintiff in appealing from the judgment relies upon alleged errors of law arising from some of the court's rulings on the evidence and the instructions given and refused.

The first alleged libel was published by Time, Inc., in the issue of its magazine Life dated January 17, 1944. The article in question is entitled "U. S. Indicts Its Two Top Fascists," and covers pages 15 through 19. The top half of page 15 consists of pictures of Lawrence Dennis and Joe McWilliams, the indicted men. The caption under McWilliams' picture describes him as wanting to be the American führer. It quotes him as saying, "Once in power, I will down all dissident opinion * * * run the government like a factory

* * * ship all Jews to Madagascar." The lower half, except for a small picture, consists of the aforesaid title of the article and a short expository article, the first sentence of which reads in part, "* * * news from the crackpot fringes of U. S. public opinion." In the first paragraph is the further sentence that "* * * three hundred people attended a 'Peace Now' rally in Carnegie Chamber Music Hall and applauded the speakers who demanded that the U. S. immediately offer 'generous' peace terms to Hitler and the Japs (see pp. 18, 19)." Pages 16 and 17 are primarily pictorial and consist of pictures of several persons mentioned in "Under Cover," a book by John Roy Carlson, which is characterized on page 16 as "No. 1 Best Seller Is The Story Of A One-Man Crusade Against U. S. Fascists." On page 18 in the upper left corner appears the picture of plaintiff. Separate pictures of three other persons appear on the same page, all four of which are described in the accompanying article as being taken at the peace meeting in Manhattan. Just over plaintiff's hair line in his picture, which appears to have been taken while he was speaking, is the caption "U. S. Indicts Fascists (continued)." The article on the same page is entitled " 'Peace Now' Is New Propaganda Drive To Prevent U. S. Victory" and it describes the movement as favoring "an immediate armistice and a negotiated peace * * *" The article describes plaintiff as its chairman and guiding spirit. It continues: "As a spellbinder Dr. Hartmann compares favorably with Joe McWilliams * * * Sample punch line from his speech last week: 'It is no accident that the New Deal, which began by killing pigs, ended by killing the children of Europe and Asia.' " On page 19 appears a full page picture taken at the meeting described in the article.

Plaintiff contends that the grouping, headlines and references of this printed matter were made wilfully and maliciously by the editors and publishers; that the article was distributed by the defendant for the purpose of charging plaintiff with being a reprehensible character, a fascist, a Jew-baiter, a seditionist and a traitor to the United States; and that it was circulated for the purpose of villifying and libeling him, and holding him up to public hatred, ridicule and contempt.

The second alleged libel was published in Life on February 7, 1944, and consists of a letter from plaintiff and the editor's comment thereon. Both the published letter and the comment are set out below.[1] Plaintiff alleges that the comment on his letter charges him with dangerous and subversive activities inimical to the nation's welfare and was circulated for the purpose of libeling him; that defendant knew the charges were false and distributed the magazine for the purpose of holding him up to public hatred, ridicule and contempt; that as a result plaintiff lost his position of Professor of Educational Psychology at Teachers College, Columbia University; that he was

[1] Sir:
"May I request an immediate and complete apology to myself and my associates in the 'Peace Now Movement' for misrepresenting our policy and program?

By linking us with groups and personalities whose support our statutes expressly repudiate, you convey a grossly inaccurate picture of our aims and methods; and by prominently printing 'U. S. Indicts Fascists' a quarter-inch above my photograph you are guilty of the crudest kind of character assassination.

The absurdity of your editorial blunder of commission is increased by your corresponding error of omission in failing to mention that such old fashioned societies like the National Council for the Prevention of War, the War Resisters League and the Fellowship of Reconciliation are also vigorously pushing a Wage Peace now Campaign."

George W. Hartmann
Chairman
The Peace Now Movement
New York, New York

"Life regrets that a printer's error, later corrected, might leave the impression that Dr. Hartmann and his 'Peace Now' followers had been indicted by the U. S. as Fascists. Such, of course, is not the case.

However, Life believes that it has fairly and substantially described Dr. Hartmann and the 'Peace Now' movement in its text. Life also believes that, at this critical time when united effort is necessary to gain a worth-while victory and a worth-while peace, 'Peace Now' is not only dangerous but subversive to that end." Ed.

made sick and incurred medical expenses; that he sustained damages to his good name, reputation and professional standing.

It appears that plaintiff, a native born citizen, is an educator and writer and that he is nationally recognized as an authority in his field of educational and social psychology. He holds the degree of Ph. D. from Columbia University and studied in ante-Hitler Germany. From 1931 to May, 1944 he taught continuously at Pennsylvania State College, Teachers College at Columbia University, and as a visiting lecturer at Harvard University. In May, 1944 he was dismissed from his post of full professor at Columbia. He was later restored to his former position but not until December, 1945. At the time of the complaint he held this same position. After his dismissal he suffered a nervous collapse and entered a sanitorium for medical treatment. It further appears that Dr. Hartmann for many years has been active in several peace movements, and that while teaching in Pennsylvania he became associated with the Quakers and became an absolute pacifist. Politically, he is an active Socialist and in 1944 ran for Mayor of New York City.

The Peace Now movement was initiated in July, 1943, and plaintiff was made temporary and then permanent chairman of the organization. The founders were pacifists and a statement issued by the new organization expressed belief in immediate peace instead of a punitive and unilateral peace later. The organization's headquarters were in New York City and its early activities consisted largely in mailing pamphlets. On December 30, 1943 it held its first public meeting. It was this meeting which was described in the first Life article, and it was covered by other reporters as well as by a representative of Life. Plaintiff was the principal speaker. The context of his speech was the call for an immediate armistice, and he quoted from a then recent radio address of the Pope in support thereof. He attacked the leaders of the federal government for their advocacy of an unconditional surrender policy. Affirmatively, he urged a world peace conference to negotiate peace on the basis of mutual give and take.

Not all of the copies of the January 17th issue of Life contained the caption on page 18 over the hairline in plaintiff's picture: "U. S. Indicts Fascists (continued)." The caption was deleted in less than one-third of the copies distributed, and 1,550,000 undeleted copies were distributed. There was placed in evidence teletype messages exchanged between the New York and Chicago offices of Life to the effect that the caption must be deleted and that it was "a legal matter and must be done regardless of cost."

Defendant is a Delaware corporation and a distributor of Life and other magazines. It maintains branch offices throughout the United States. It receives the copies of Life from the printers located in Chicago and Philadelphia in bundles of from thirty-five to seventy copies, beginning on Tuesday of the week preceding the issue date, and it ships them world-wide by railroad, truck and ship. Actual supervision of the printing of Life, however, is done by Time, Inc.

In its defense defendant offered testimony that it knew nothing of the contents of either issue of the Life magazine complained of, and that it was the custom among distributors not to examine the contents of the magazines distributed by them. There was further testimony that because time was of the essence in distributing magazines defendant relied upon the integrity of the publisher; that defendant made no efforts to learn of—nor was it notified —the contents of either issue of Life; that it had no working relationship with the publishers of Life; and that it received no notice from Time, Inc., not to distribute the undeleted copies of Life. Defendant also defended on the grounds that the articles in question were true and that they were conditionally privileged as fair criticism.

Defendant moved for a summary judgment to dismiss the complaint. Briefs were prepared and submitted, and after oral argument the motion was denied. In his opinion filed at the time the motion was denied, D.C., 69 F.Supp. 736, 739, Judge Duffy correctly analyzed the applicable law, which is that of Wisconsin, and held that publication of printed matter imputing the commission of a crime is libelous per se. "In this case," the court said, "plaintiff was accused of having been indicted by the

United States government." He concluded, however, that it was a question for the jury to determine whether under the applicable law defendant, having made a showing that its officers and employees did not know of the offending articles, was negligent in not knowing.

Plaintiff relies heavily upon the sentence above quoted from the opinion denying defendant's motion for a summary judgment in that by publication of the articles a crime had been imputed to plaintiff which was libelous per se. He argues that the trial court erroneously reversed itself in this regard when upon plaintiff's motion notwithstanding the verdict it denied the motion and declared that the controversial sentence was not intended to be construed as whether plaintiff was accused of having been indicted by the United States Government, but merely as stating that the law regarding published printed matter imputing a crime to an individual is libelous per se.

■ Plaintiff's contention in this regard must fail in the light of Rule 56(d), Federal Rules of Civil Procedure, 28 U.S.C.A., under which defendant's motion for a summary judgment was denied, because, as stated in the rule, where the case is not fully adjudicated on the motion and a trial is necessary the court must make an order specifying the facts that appear without substantial controversy. An examination of the court's order showed that it merely denied the motion to dismiss the complaint. No facts were specified as uncontroverted. The allegation in the complaint that plaintiff was labeled as an indicted fascist in the first magazine article was denied by defendant in its amended answer. Clearly the pleadings disclosed disputed facts. The court properly denied defendant's motion. Its authority in this regard is limited, Electrical Fittings Corporation v. Thomas & Betts Co., D.C., 3 F.R.D. 256, and any conclusion from the disputed facts by the court is necessarily precluded.

■ There is no dispute as to the rule of law stated by the trial judge that the publication of printed matter which imputes the commission of a crime to an individual is libelous per se. Defendant concedes that this is a correct statement of the law. It follows that to call a person an indicted fascist is libelous per se. See Holden v. American News Co., D.C., 52 F.Supp. 24. The issue then turns to the question of whether the articles in question did characterize plaintiff as an indicted fascist. True, the caption above his picture in the first article read: "U. S. Indicts Fascists (continued)," and the publisher, Time, Inc., while the first issue was in the process of printing, in a teletype message between its New York and Chicago offices, demanded deletion of the caption and described it as a "legal matter" that "must be done regardless of cost." Nevertheless, the table of contents in the first issue listed the article as "Fascists Indictments and 'Peace Now'" which might be construed as an attempt to differentiate between the two. The text of the written article associated the inception of the movement as a portion of the "news from the crackpot fringes of U. S. public opinion." Nowhere in the editorial text, however, is plaintiff termed an indicted fascist. Whether the caption over the plaintiff's picture was libelous of him or merely a printer's device to tie up related events would seem a question for the jury. In the editor's note following the publication of plaintiff's letter in the second article Life termed the caption a printer's error, later corrected, and stated that it regretted that it might leave the impression that plaintiff was indicted by the United States as a fascist. Unequivocally, it further stated, "Such, of course, is not the case."

■ From the foregoing it is clear that the articles in question are susceptible to both a libelous and a non-libelous meaning. In this regard a jury question is then raised. Wisconsin law recognizes this by holding that if upon consideration of the articles as a whole there is ambiguity as to the alleged interpretation of the articles the issue is for the jury. Singler v. Journal Co., 218 Wis. 263, 269, 260 N.W. 431; Leuch v. Berger, 161 Wis. 564, 570, 155 N.W. 148. The issue was properly before the jury, and plaintiff cannot argue that the meaning of the articles is clear and that the only question for the jury's determination was the matter of damages.

■ An even more decisive factor in the instant facts as to the correctness of submitting the entire issue to the jury is presented by the fact that defendant was not the publisher but the distributor of the alleged libelous articles. In this regard the applicable law clearly is that the distributor of an alleged libel is not liable if he can prove to the satisfaction of the jury that he did not know of the libel, and that he was not negligent in not knowing. Street v. Johnson, 80 Wis. 455, 458, 50 N.W. 395, 14 L.R.A. 203, 27 Am.St.Rep. 42. That defendant raised a controversial issue by properly offering evidence as to the custom of the industry was recited earlier in the opinion. We conclude that the entire question of whether the articles were libelous was a question which was properly submitted to the jury.

Plaintiff strongly urges that the admission in evidence of a House of Representatives' Report by the Special Committee on Un-American activities (then known as the Dies Committee) and reading of its contents to the jury was prejudicial and constituted reversible error. He argues that this evidence was admitted generally over his objection; that an examination of it discloses that it was based entirely upon hearsay; that no witnesses were examined; that it is replete with expressions of opinion and unsupported conclusions reached upon a hasty investigation of the files of Peace Now.

An examination of the exhibit does disclose that the committee's findings were based almost entirely upon the files of the organization. The plaintiff is mentioned in the capacity of one of the organizers, and he is further identified as a leader in the organization. The report also quotes from the previously mentioned plaintiff's speech delivered in New York City; that as "all the warring nations have been selfish and stupid, * * *, we must spend one-half of our national income murdering one another." The report concentrated its arrows on one John Collett, a one-time field secretary of Peace Now, who while touring for the organization was arrested and convicted of voyeurism. The report concluded that the movement was guilty of seditious acts.

■ The propriety of the admission of this exhibit turns not upon its contents but upon the purpose for its admission. Plaintiff argues that it was not introduced to impeach his testimony or to show a conflict but that it was admitted generally to arouse conventional patriotism and to prejudice the jury. An examination of the record concerning its admission, however, shows it to have been offered for the purpose of lessening defendant's responsibility for the causation of plaintiff's alleged injury.[2] It was offered apparently in mitigation of damages which would run to the amount of the jury's award. The law is clear that a defendant is liable only for the damages which he has caused, and he is not liable for the injury done by others. Newell, Slander and Libel, § 780 (4th Ed.). In his instructions to the jury the judge told the jury in regard to the report and newspaper articles admitted in evidence if it awarded any damages it could consider whether the damage flowed from the articles complained of, or from other publicity. Thus it appears that the court did confine the evidence to its proper category, for

[2] "Mr. Orr: I will offer Exhibit 57 in evidence.

"Mr. Goldstein: I object to it as incompetent, irrelevant and immaterial. It is subsequent to the publishing of libels involved here.

"Mr. Orr: It is relevant on many counts, your Honor.

"The Court: Well, I was going to say, it may or may not be relevant. I think I will overrule the objection, without prejudice to your renewing it again at the end of the trial, if you think it has not been connected up in any way.

"Mr. Orr: Your Honor, may I state that it is already connected up?

"The Court: Well, I don't know.

"Mr. Orr: This man has testified that he was made ill by this article. We want to show the many documents that could have made him ill. He testified that he lost his job by reason of the Life article. We want to show the many documents which could have accounted for that. They are all prior to the illness, and the loss of the position.

"The Court: What is the date of it?

"Mr. Orr: The date is February 17th, 1944.

"The Court: The present ruling is: It may be received over the objection."

586

in the colloquy quoted in footnote 2 the judge inquired the date of the report apparently in an effort to make certain that it was not dated subsequent to the injuries complained of. The fallacy in plaintiff's argument in this regard is that he is arguing as to the character of defendant's conduct, i.e., the intent motivating defendant's distribution of the articles, and whether it was justified. The cases cited by plaintiff verify this. In Carpenter v. New York Evening Journal, 96 App.Div. 376, 89 N.Y. S. 263, the court held that it was reversible error to admit a witness' testimony justifying the publication in that in the witness' opinion, he, at a previous period as an assistant district attorney, had investigated criminal charges brought against the plaintiff and believed them well-founded. Further error was discovered in the admission of other newspaper articles carrying the charges of the alleged libel, but they, too, were admitted in justification of the defendant's alleged libel, and not for the limited purpose, as here, of showing that other articles might have caused injury complained of. Likewise, in Pfister v. Milwaukee Free Press Co., 139 Wis. 627, 121 N.W. 938, the court held that evidence of like charges published in other newspapers was properly excluded, for each journal is separately liable for its own publication. It is clear that while a defendant cannot justify his own alleged libelous article by reference to other like newspaper articles, he can be assessed damages only for the harm done by his own publication, and he, therefore, may offer other like publications if published at the time of the alleged injury as possible causes for the damage complained of by his publication. We are satisfied that the report of the Congressional Committee could be admitted for that purpose and that it was so limited, in the court's instruction to the jury.

Newspaper accounts and other magazine articles pertaining to the activities of Peace Now and its individual members were admitted over the objections of plaintiff. Because the court in its instructions did limit their applicability to the issue of mitigation of compensatory damages, we think for the reasons stated above that the allegations of error are groundless.

We have considered other points of error relied on by plaintiff but find no merit in them.

The judgment of the District Court is affirmed.

Affirmed.