In the
United States Court of Appeals
For the Seventh Circuit

No. 93-3124

CORTEZ RIGGINS,

Plaintiff-Appellant,

v.

ANDREW WALTER, RUSSELL TICER,
T. THOMAS, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 90 C 3162--Gerald B. Cohn, Magistrate Judge.

Submitted January 5, 1995/*--Decided May 5, 1995

Before BAUER, RIPPLE and ROVNER, Circuit
Judges.

PER CURIAM.  Cortez Riggins, an inmate
formerly at Menard Correctional Center,
appeals the judgment in favor of the
defendants, who are prison officials, in
his suit filed pursuant to 42 U.S.C. sec.
1983 for violations of the Fifth, Eighth
and Fourteenth Amendments. After an
administrative proceeding, the prison's
Adjustment Committee found that Riggins
had violated 20 Ill. Admin. Code sec. 504
Table A Nos. 601 ("Aiding and Abetting,
Attempt, Solicitation or Conspiracy") and
203 ("Drugs and Drug Paraphernalia").
Riggins claims that the magistrate judge
erred by: (1) dismissing his due process
claims concerning his initial segregation
for failure to state a claim, (2)
granting summary judgment on his Eighth
Amendment claim, (3) denying his motion
for judgment on the pleadings as
untimely, (4) rejecting two more
procedural due process claims after the
bench trial and (5) failing entirely to
address his claim that he was punished in
retaliation for the exercise of his Fifth
Amendment rights. We affirm.
   On September 16, 1989, Acie McLaurin was
found with a balloon filled with drugs in
his mouth after associating with Riggins
and his family on visitation day.
McLaurin told Andrew Walter, a
correctional officer, that Riggins had

his visitors bring in the drugs. Mrs. Gray, McLaurin's mother, told Walter that Riggins had approached her son, that her son went to join Riggins and his family, and that he had abruptly terminated their visit after returning from the group with something in his mouth. Riggins was placed in segregation and subsequently received a copy of Walter's internal disciplinary report, which referred to McLaurin and his mother only as confidential sources. Mildred DeWitt, a hearing investigator for the Adjustment Committee, later filed a hearing investigator's report.

On September 20, 1989, the Adjustment Committee convened and then granted Riggins a continuance so that he could obtain McLaurin as a witness. On October 2, 1989, the committee, which was now made up of Theodore Thomas, Larry Phipps and chairman Russell Ticer, reconvened. Riggins refused to take a polygraph in response to Ticer's request. The committee found that Riggins had violated the regulations, and he received ninety days loss of good time credit, ninety days placement in "C" grade and ninety days segregation. However, he only served two additional weeks of segregation due to crowding. Riggins subsequently filed a grievance concerning these proceedings, which was dismissed. He then filed this suit in the district court, and the parties agreed to a trial by a magistrate judge pursuant to 28 U.S.C. sec. 636(c)(1).

Riggins appeals the dismissal of two of his claims under Federal Rule of Civil Procedure 12(b)(6). First, Riggins claims that Walter violated his due process rights by improperly placing him in segregation without a predeprivation hearing. Riggins' amended complaint states that Walter "punished the plaintiff by placing him . . . into segregation." (R. at 4.) However, one of the exhibits that he submitted to support his claim states that "I was put in segregation under investigative status." See Schnell v. City of Chicago, 407 F.2d 1084, 1085 (7th Cir. 1969) (holding that under Fed. R. Civ. P. 10(c), "affidavits and exhibits attached to the complaint are a part thereof for all purposes."). Temporary confinement pursuant to 20 Ill. Admin. Code sec. 504.40, which permits the shift supervisor to place the

prisoner "in investigative status or in temporary confinement pending a disciplinary hearing," constitutes administrative, not punitive detention.

Thus, the magistrate judge properly dismissed the claim against Walter because even if sec. 504.40 did create aprotectible interest, which it does not, Woods v. Thieret, 903 F.2d 1080, 1083 (7th Cir. 1990), the postdeprivationhearing sufficed to meet the demands of due process, Gilbert v. Frazier, 931 F.2d 1581, 1582 (7th Cir. 1991) (dicta)./1 Second, Riggins also claims that the magistrate judge erred by dismissing DeWitt from the suit. However, Riggins' amended complaint makes no reference to DeWitt in relation to any constitutional violation./2 Thus, the magistrate judge properly dismissed the claims against her.

Riggins claims that the magistrate judge erred by granting summary judgment in favor of Ticer, Thomas, Phipps and Walter/3 on Riggins' Eighth Amendment claim concerning the conditions of his segregation unit cell. The defendants supported their motion for summary judgment with a deposition of Riggins, in which he admitted that, to his knowledge, none of them worked in the segregation wing. In his response to the motion for summary judgment, Riggins failed to generate a factual dispute concerning their knowledge of the conditions with any affidavits or evidence of his own with respect to that point. Tobey v. EXTEL/ JWP, Inc., 985 F.2d 330, 333 (7th Cir. 1993) (holding that mere denials are not sufficient to create factual controversy in the face of motion supported by evidentiary materials). Instead, he based his claim on the fact that their abuse of the system had resulted in his placement in that cell.

Although a claim under the Eighth Amendment may be based on a deprivation that occurs at the prison official's direction or with his or her knowledge or consent, Crowder v. Lash, 687 F.2d 996, 1006 (7th Cir. 1982), Riggins has failed to link these defendants to the alleged constitutional deprivation, which involves the conditions of the cell and not the institutional process that placed him in it. Even construing the facts before the court in a light most

favorable to Riggins, the record contains no evidence that these defendants acted with "deliberate indifference" toward or even knew of the conditions of the cell. Del Raine v. Williford, 32 F.3d 1024, 1038 (7th Cir. 1994) (quoting Jackson v. Duckworth, 780 F.2d 645, 653 (7th Cir. 1985) (citation omitted)) ("The minimum intent required is "'actual knowledge of impending harm easily preventable.'""). Thus, the magistrate judge properly granted summary judgment.

More than twenty-six months after the close of pleadings, twenty months after the dispositive motions deadline and two weeks after the final pretrial order, Riggins moved for judgment on the pleadings under Federal Rule of CivilProcedure 12(c)./4 A flurry of motions ensued. The magistrate judge dismissed all of the motions as untimely. Under Fed. R. Civ. P. 16(b), a magistrate judge, when authorized by district court rule, may enter a scheduling order that limits the time to file motions./5 Rule 16(b) states that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the . . . magistrate judge." We review the denial of the Rule 12(c) motion that was filed after the motions deadline set in the scheduling order for an abuse of discretion. See Jones v. Coleman Co., Inc., 39 F.3d 749, 753-54 (7th Cir. 1994) (holding that magistrate judge did not abuse his discretion by permitting summary judgment motion after deadline for good cause, despite district court's prior denial of motion as untimely under Rule 16(b)); see also Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure sec. 1367 at 514 (1990) (stating that judge has discretion to deny Rule 12(c) motion filed after excessive delay).

Rule 12(c) states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Two courts have relied on this language to avoid denying a Rule 12(c) motion as untimely./6 However, Rule 12(c) does not restrict the court's discretion under Rule 16(b). Just as we have applied Rule 16(b) to a motion pursuant to Rule 56, which states that the motion may be brought "at any time" after certain criteria are met, Fed. R. Civ. P. 56;

Jones, 39 F.3d at 753-54, we now hold that a Rule 12(c) motion may be brought after the dispositive motions deadline if the moving party complies with the requirements of Rule 16(b) and if it will not delay trial. See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992) (holding that in reviewing an attempt to amend pleading after scheduling order deadline, court must first find good cause for amendment under Rule 16(b) before considering propriety of amendment under Fed. R. Civ. P. 15). Both cases permitting Rule 12(c) motions on the eve of trial do not dissuade us from this interpretation. Both courts referred to changed circumstances, which they in effect interpreted as good cause for the delayed filing./7

In this case, Riggins never filed for leave to amend the schedule. However, assuming arguendo that his filing of the motion may be construed as filing for leave to modify the schedule, see Johnson, 975 F.2d at 609 (discussing split of authority concerning need of formal motion to amend), he completely fails to show cause for why the schedule could not "reasonably be met despite the diligence of the party seeking the extension."/8 Fed. R. Civ. P. 16 commentary to the 1983 Amendment. Since Riggins has failed to offer any reason why he could not have filed his motionbefore the deadline, we affirm the magistrate judge's denial of the motion.

After the bench trial, the magistrate judge held that the members of the Adjustment Committee did not violate due process because he found "some evidence" to support their decision./9 Riggins claims that not enough evidence exists to comport with due process. "Following a bench trial, we review the district court's factual determinations for clear error and its legal conclusions de novo." Market St. Assocs. Ltd. Partnership v. Frey, 21 F.3d 782, 785 (7th Cir. 1994).

"[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent, Massachusetts Correctional Inst. v. Hill, 472 U.S. 445, 455-56 (1985). Before we proceed, we note that the magistrate judge erred by using testimony after the

fact to supplement the administrative record. Hayes v. Thompson, 637 F.2d 483, 489 (1980) ("It is not adequate to review the Committee's guilty finding on the basis of subsequent testimony."). But see Ponte v. Real, 471 U.S. 491, 496 (1985) (effectively overruling Hayes in part on other grounds by holding that court may use subsequent testimony to review refusal of committee to call witnesses). "Support in the administrative record is necessary to protect the prisoner from arbitrary official action," Hayes, 637 F.2d at 488, and we shall therefore confine our review to the facts in the administrative record. The Adjustment Committee Summary states that the committee based its decision on facts found in the internal disciplinary report and the hearing investigator's report. However, only the Adjustment Committee Summary and the disciplinary report appear in the record before us./10

The disciplinary report, which provided in part the basis for the committee's decision, stated that confidential sources had informed Walter that Riggins had his visitors bring in drugs./11 Although McLaurin later recanted his statement, under some circumstances a recanted statement made with corroboration of its reliability may even suffice to convict a defendant beyond a reasonable doubt. Ticey v. Peters, 8 F.3d 498, 501 (7th Cir. 1993) (using five factor test for sufficiency of victim's recanted out-of-court statements alone to uphold rape conviction). We find the evidence given to the committee by these confidential sources constitutes "some evidence," which "obviously ranks below what would be sufficient in a criminal or civil trial. . . ." Lenea v. Lane, 882 F.2d 1171, 1175 (7th Cir. 1989). Thus the disciplinary committee did not violate Riggins' procedural due process rights.

Riggins also contends that Walter wrote a false disciplinary ticket based on the lies of an inmate who had just been caught with drugs. However, given that the adjustment committee decided upon the basis of "some evidence" after meeting the procedural requirements of Wolff, 418 U.S. at 564-66, the magistrate judge properly rejected Riggins' claim against Walter, even assuming arguendo that Walter had written a false disciplinary ticket based on false evidence. Hanrahan

v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984).

Riggins claims that the magistrate judge erred by failing to address his claim that the Disciplinary Committee punished him for refusing to take a polygraph, thereby violating his right against self-incrimination./12 According to Riggins, Ticer asked him to take a polygraph, which he declined because he felt that he did not have to take one and because he had not done anything wrong. With the implied assent of the other committee members, Ticer then allegedly verbally abused him and sent him to segregation because he refused. The defendants assert that Riggins never raised a Fifth Amendment claim or alternatively that the court properly dismissed it as meritless. As shown by the complaint and by the second Final Pretrial Order,/13 Riggins properly raised this issue before the magistrate judge, who failed to address this claim in his final order. However, since this claim lacks merit as a matter of law, we need not remand this issue to the district court.

"[G]overnment cannot penalize assertion of the constitutional privilege against compelled self-incrimination by imposing sanctions to compel testimony which has not been immunized." Lefkowitz v. Cunningham, 431 U.S. 801, 806 (1977). The Supreme Court has said that this protection applies to the prison disciplinary hearing context. Baxter v. Palmigiano, 425 U.S. 308, 318 (1976) ("[I]f inmates are compelled in those proceedings to furnish testimonial evidence that might incriminate them in later criminal proceedings, they must be offered 'whatever immunity is required to supplant the privilege' and may not be required to 'waive such immunity.'"). However, whatever other infirmities punishing a general refusal to appear and testify may or may not have, punishment alone does not necessarily violate the Fifth Amendment./14 "In each of the so-called 'penalty' cases, the State not only compelled an individual to appear and testify, but also sought to induce him to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.'" Murphy, 465 U.S. at

434 (quoting Lefkowitz v. Cunningham, 431 U.S. 801, 806 (1977)). Although Riggins is a prisoner rather than an employee, the State maintains a certain authoritarian relationship with him that brings to bear these principles. See Baxter, 425 U.S. at 316-17 (1976) (drawing on public employee cases to establish general principles of right against self-incrimination in prison disciplinary setting).

Riggins has not alleged that the committee members said that he would not be free to decline to answer particular questions or that they asked him to expressly waive his Fifth Amendment rights. See id. at 437. In Gulden v. McCorkle, 680 F.2d 1070, 1071, 1075-76 (5th Cir. 1982), cert. denied, 459 U.S. 1206 (1983), the Fifth Circuit held that the failure to tender an offer of immunity when compelling an employee to testify was not the equivalent of an impermissible compelled waiver of immunity because Garrity v. New Jersey, 385 U.S. 493 (1967), requires compelled statements to be excluded. Thus, it would be the same as if the employee was granted immunity. In contrast, this circuit requires that before taking disciplinary action, a public employer must inform the employee that any compelled statements could not be used in criminal proceedings. United States v. Devitt, 499 F.2d 135, 141 (7th Cir. 1974), cert. denied, 421 U.S. 975 (1975). However, the Gulden court also held that even if such an affirmative grant of immunity might at some point be required, it would need to be made "in the context of a particular proceeding after proper invocation of the fifth amendment." Gulden, 680 F.2d at 1076 n.11. Thus the Gulden court distinguished the Seventh Circuit penalty cases that required an affirmative offer of immunity on the grounds that the public employer had failed to tender immunity "at the time of a grand jury appearance . . . or at an interdepartmental interrogation," id. at 1075 (citations omitted) (emphasis modified).

In effect, the Gulden court held that even in light of the relevant Seventh Circuit precedent, it would be premature to find that punishing a refusal to attend a polygraph examination violated the privilege against self-incrimination

because the witness, upon showing up at the examination and being asked potentially incriminating questions, still had the right to claim the privilege and to be informed of the availability of immunity. Therefore, we hold that, whatever other infirmities the disciplinary committee's response might have had, punishing him for refusing to participate at all in a polygraph examination, without more, did not violate his Fifth Amendment right against self-incrimination.

AFFIRMED.

FOOTNOTES

/* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed. R. App. P. 34(a); Cir. R. 34(f). Appellant has filed a statement requesting oral argument. Upon consideration of that statement, the briefs and the record, the request for oral argument is denied, and the appeal is submitted on the briefs and record.

/1 Riggins argues that filing a "disciplinary report" instead of an "investigative disciplinary report" (also known as an "investigative report") proves that the confinement was punishment. However, the decision to file a disciplinary report or an investigative report merely turns on the amount of evidence received by the employee. 20 Ill. Admin. Code sec. 504.30(b),(d). Filing a disciplinary report does not render punitive the temporary confinement for investigative purposes.

/2 Although the facts alleged in his initial complaint do mention her, it makes no difference because "an amended pleading supersedes the original." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1546 (9th Cir. 1989).

/3 Phipps was referred to as "Phillips" by Riggins in his complaint and by the defendants in their motion for summary judgment. However, both Riggins in his deposition and the magistrate judge in his final order defined "Phillips" as the person who wrote the disciplinary ticket, who was Walter.

/4 In the conclusion of his brief, Riggins asserts that he made an oral motion for judgment on the pleadings prior to the filing of the written

motion. However, he does not state when he made it, and the record contains no evidence of any such motion.

/5 In this case, the magistrate judge was authorized under U.S. Dist. Ct. R. 25(h) (S.D. Ill.) (permitting magistrate judge to rule on all dispositive motions pursuant to agreement under 28 U.S.C. sec. 636(c)).

/6 See General Elec. Co. v. Sargent & Lundy, 916 F.2d 1119, 1131 (6th Cir. 1990) (holding that trial court erred by denying as untimely a motion to amend that it construed as Rule 12(c) motion, because the motion was well-supported and the non-moving party failed to articulate any prejudice caused by the delay of trial); Kishwaukee Community Health Serv. Ctr. v. Hospital Bldg. & Equip. Co., 638 F. Supp. 1492, 1494-95 (N.D. Ill. 1986) (rejecting plaintiff's claim that motion was untimely, because trial date had been struck without setting a new date and because it found no evidence that the defendants filed the motion for the purpose of delay); Wright & Miller, supra, sec. 1367 ("If a party indulges in excessive delay before moving under Rule 12(c), the court may refuse to hear the motion on the ground that its consideration will delay or interfere with the commencement of the trial. The determination of whether the motion constitutes a delay of trial is within the sound discretion of the judge.").

/7 General Elec. Co., 916 F.2d at 1130 n.5 (finding no prejudice because non-moving party "dramatically changed the nature of this suit" nine months before motion was filed by adding a new theory more than three years after it filed its original cross-claim motion); Kishwaukee Community Health Serv. Ctr., 638 F. Supp. at 1495 (noting that subject of motion involved "a continually evolving doctrine, . . . which also excuses somewhat a delayed filing of the motion.").

/8 See Sea-Land Services, Inc. v. D.I.C., Inc., 102 F.R.D. 252, 253-54 (S.D. Tex. 1984) (denying defendant's Rule 12(c) motion filed seven months after motion cut-off date because "[t]he Defendant offers the Court no explanation or showing of 'good cause' why on the eve of trial the motion should be considered.").

/9 In the order granting summary judgment in part, the magistrate judge denied summary judgment on the due process claims against the Adjustment Committee and said that, although it agreed that the defendants had provided the required procedural safeguards, see Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974), "[t]he finding of the

Adjustment Committee is not based upon some evidence as required by Hill." (R. at 33.) Riggins claims that this statement established the lack of even "some evidence" as fact. See Fed. R. Civ. P. 56(d). We disagree. The court did not specify this fact as not in controversy pursuant to Rule 56(d). Hartmann v. American News Co., 171 F.2d 581, 584 (7th Cir. 1948), cert. denied, 337 U.S. 907 (1949). Instead, the court only stated that the Adjustment Committee "may have violated his constitutional rights." (R. at 33 (emphasis added).)

/10 Although both final pretrial orders list the internal affairs report and the hearing investigator's report as exhibits, neither document was submitted at trial.

/11 Riggins protests that the committee failed to demonstrate the reliability of these sources. Although the review for "some evidence" is limited to the administrative record, the district court may make findings of reliability of confidential sources in a subsequent in camera review. Wagner v. Williford, 804 F.2d 1012, 1016 n.3 (7th Cir. 1986) (distinguishing use of subsequent testimony to support reliability of sources from use of such testimony to support decision itself). After the bench trial in which Riggins had the opportunity to cross-examine Andrew Walter on the identity, testimony and demeanor of these formerly confidential sources, the magistrate judge implicitly found the sources sufficiently reliable enough to base factual findings on some of the hearsay statements as facts and to find no constitutional violation. After reviewing the trial transcript, we find no abuse of discretion. Henderson v. United States Parole Comm'n, 13 F.3d 1073, 1078-79 (7th Cir. 1994) (finding no abuse of discretion where district court implicitly found in camera information reliable by holding that, upon reviewing record as a whole, no constitutional violation had occurred), cert. denied, 115 S. Ct. 314 (1994). Furthermore, Riggins' claim that he was denied the right to cross-examine the witnesses against him at the committee hearing lacks merit. Id. at 1078 (holding that in prison disciplinary proceedings, "[p]risoners . . . do not possess Sixth Amendment rights to confront and cross-examine witnesses.").

/12 Although Riggins claims on appeal that his Fifth Amendment rights were violated when Walter punished him with segregation for refusing to take a polygraph and that the first disciplinary committee likewise punished him with segregation for the same reason, he failed to properly raise these claims before the magistrate judge. "We consistently hold that arguments not made in the

district court are waived." Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc., 991 F.2d 1249, 1258 (7th Cir. 1993).

/13 The second Final Pretrial Order contains "Contested Issue of Law" No. 4: "Whether defendants violated plaintiff's rights when they placed him back in disciplinary segregation after plaintiff refused to submit to a polygraph." (R. at 47).

/14 See, e.g., Minnesota v. Murphy, 465 U.S. 420, 435 n.2 (1984) (noting that if the State recognizes that required answers may not be used in criminal proceedings, "nothing in the Federal Constitution would prevent a State from revoking probation for a refusal to answer that violated an express condition of probation or from using the probationer's silence as 'one of a number of factors to be considered by the finder of fact' in deciding whether other conditions of probation have been violated."); Lefkowitz, 431 U.S. at 806 ("Public employees may constitutionally be discharged for refusing to answer potentially incriminating questions concerning their official duties if they have not been required to surrender their constitutional immunity.").